## MOSS *et al. v.* MOSS.

1. In her suit for alimony the wife alleged cruel treatment on the part of her husband, and threatened violence to her by her husband's son-in-law, done with her husband's approval, and designed to cause the wife to leave her husband's home; and that the husband had divested himself of all of his property by fraudulently transferring it to his daughter, and was aided therein by his son-in-law. The husband, his daughter, and his son-in-law were made defendants, and relief against them, by cancellation of the alleged property transfers and for injunction against its alienation or incumbrance, was prayed. All the defendants answered, and in his answer the son-in-law denied all the allegations of threatened violence, and alleged that to his knowledge the property had been transferred prior to the date of the plaintiff's marriage. *Held*, that the acts and sayings of the son-in-law, to which objection was made, tended to disprove his answer and to support the plaintiff's allegations, and were competent evidence.

2. The judge did not abuse his discretion in allowing temporary alimony and counsel fees, and preserving the status of the property, under the terms of the order.

OCTOBER 13, 1915.

Alimony and injunction. Before Judge Patterson. Cobb superior court. April 28, 1915.

Mrs. Catherine V. Moss brought suit against her husband, Daniel J. Moss, to recover an allowance of alimony temporary and permanent, and counsel fees, and for injunction against her husband's disposing of or encumbering his property. She alleged that she was married to him on July 10, 1914, and lived with him until November 6, 1914, when she was compelled to separate herself from him on account of his cruel treatment, and of the conduct of his son-in-law, Dr. Edwards, which placed her in peril of her life, and which had the apparent approval of her husband.

She has since that time been living in a state of bona fide separation from her husband. She afterwards amended her petition by alleging that since the separation her husband had fraudulently conveyed his land to his daughter, and had so antedated the deed as to make it appear that it was executed prior to his marriage to the plaintiff, and had also turned over to his daughter all of his notes and cash; and that he had divested himself of all of his property for the purpose of hindering, delaying, and defeating her from the recovery of any alimony; and she prayed that his daughter, Mary Edwards, and her husband, J. A. H. Edwards, be made parties and be restrained from disposing of the property received from her husband, or encumbering the same, and from transferring the notes. Daniel J. Moss answered, admitting the marriage, but denying all charges of improper conduct or cruel treatment by himself or his son-in-law. He averred, that he discharged his duties as husband towards the plaintiff; that she quit home without provocation, and of her own accord; that prior to his marriage he had conveyed to his daughter, who was at that time a single woman, the real-estate referred to in the amendment, which deed was executed on a consideration of love and affection and of the fact that his daughter had lived with him many years after her majority and had helped him accumulate the property; and that he had, for the same consideration, on January 5, 1914, transferred and delivered the notes to his daughter. He charged cruel treatment on the plaintiff's part, and her impotency at the time of the marriage, unknown to him; and he prayed for a total divorce. Mrs. Edwards answered, that the deed was delivered to her on the day it bears date; that the land was conveyed to her because she had worked for her father and helped to accumulate this property; and that for the same consideration, on January 5, 1914, he had transferred and delivered to her the notes to the amount of $755, before his marriage to the plaintiff. J. A. H. Edwards answered, that at the time of his marriage with Mary Moss Edwards she was in possession of the deed from her father, and of the notes referred to in the amendment, which had been transferred and delivered to her prior to his marriage, and also prior to the marriage of Daniel J. Moss to the plaintiff. Evidence was submitted by both parties; and the court rendered the following decree: "After hearing the evidence offered in the above case and argument of counsel thereon,

it is considered, ordered, and adjudged as follows, to wit: (1) That within ten days from this date the defendant, Daniel J. Moss, pay to the clerk of this court, for temporary alimony for the plaintiff in said case, the sum of forty ($40.00) dollars, the same being at the rate of ten ($10.00) dollars per month, beginning with the payment of $10.00 on January 1st, 1915, and $10.00 on the first day of each succeeding month thereafter; and that on the first day of May, 1915, the said defendant, Daniel J. Moss, pay to the clerk of this court, for temporary alimony for the plaintiff, the sum of $10 and a like sum of $10.00 on the first day of each succeeding month thereafter until this case is finally tried and disposed of, or until otherwise ordered by the court. (2) It is further ordered and adjudged that the said defendant, Daniel J. Moss, pay to counsel for the plaintiff in the case, for counsel fees for bringing and prosecuting this case for the plaintiff, the sum of $100.00, one half of which is to be paid by the said defendant to the clerk of this court for counsel for the plaintiff on the first day of the next term of this court, which will convene on the third Monday in July next, and the remaining $50.00 to the clerk of this court on the first day of the November term next, which will convene on the third Monday in November, 1915; and the said defendant is ordered and directed to make said payments to the clerk of this court for counsel for the plaintiff in this case. (3) It is further ordered and adjudged that an injunction be and the same is hereby granted in favor of the plaintiff against all of the defendants in said case, restraining and enjoining them as prayed; and especially that said defendants do not sell, alien, mortgage, or convey any of the properties, real or personal, set out in the plaintiff's petition as amended, and that they do not in any wise change the status of said properties until this case is fully and finally disposed of or until otherwise ordered by the court. (4) It is further ordered that this injunction, in so far as it applies to the promissory notes involved, may be dissolved by the defendants, or the defendant Daniel J. Moss, on making and filing with the clerk of this court good and sufficient bond with good and sufficient security, to be approved by the clerk of this court, and conditioned to pay to the petitioner all sums that have been and may be awarded to and adjudicated in favor of the plaintiff in this case." The defendants sued out a bill of exceptions, assigning error on the judgment and on certain rulings upon the evidence.

*N. A. Morris* and *George D. Anderson,* for plaintiffs in error.
*D. W. Blair,* contra.

EVANS, P. J.   (After stating the foregoing facts.)

1.   Over objection, the court allowed a witness to testify that the defendant Edwards had stated to him that the plaintiff would not do anything for his father-in-law, would not wash his clothes, iron them, and that he was going to spend, or had spent, $25 to investigate her character, and talked that she was not a nice woman.   Another witness, who was the son of the defendant Daniel J. Moss and a brother-in-law of the defendant Edwards, was allowed to testify that Edwards said to him: "Boys, if you all will stick to me, we will run that old lady off.   I can get six men in Mableton to swear that your father's mind is not all right."   These conversations were had just prior to the separation; and the objection was that the statements were not made in the presence of the other defendants in the case, and were incompetent.   The petitioner alleged, as one of the reasons why she was forced to leave the roof of her husband, the conduct of his son-in-law, Edwards, the purpose of which was to cause her to leave her husband, and that such conduct put her in peril of her life, and met the approval of her husband.   The husband and the son-in-law specifically denied these charges in their sworn answers.   The wife testified to various acts of threatened violence on the part of the defendant Edwards, and that her husband, when informed of this, would curse and abuse her because she had not resented it.   Substantially the plaintiff alleged that all of the defendants were doing various acts in concert for the purpose of causing her to leave the home of her husband; and what was said by one of them in the course of the common design was competent evidence.

2.   The court also received in evidence a letter, dated August 18, 1914, to Daniel J. Moss, purporting to be signed by Mary Edwards, per J. A. H. Edwards.   There was proof that D. J. Moss received it by due course of mail, and that it was in the handwriting of the defendant Edwards.   The purport of the letter was a complaint that Mrs. Edwards had been working for her father since her majority, and that all she had received for such work was 25 and 15 cents per week; a demand of compensation in the sum of $35 for assisting in making the present crop and for household services rendered; and a complaint that her father had brought

some one else to his home to reap the benefits of her hard-earned labor. In view of the range of the evidence, authorizing an inference that the defendant had made the transfers of the property since the separation from his wife, and that the defendant Edwards had written the transfers on the notes, which purported to have borne date prior to his marriage, and Edwards' positive affirmance in his answer that the notes and deed, which were shown to be practically all the property of Daniel J. Moss, were in the possession of his wife at the time of their marriage, the evidence was competent.

3. The hearing was on the application for the allowance of temporary alimony, and of counsel fees, until the trial of the issue of permanent alimony. Under the evidence the judge did not abuse his discretion in allowing the temporary alimony and counsel fees, and preserving the status, under the terms named in the order.      *Judgment affirmed. All the Justices concur.*